**WHITE–SELLIE'S JEWELRY CO., Inc.,**
**Appellant,**

**v.**

**The GOODYEAR TIRE & RUBBER CO.,**
**Appellee.**

**No. 588.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

March 8, 1972.

Van E. Wittner, Jr., Engel, Groom & Miglicco, Houston, for appellant.

Don Harris, Harris, Archer, Parks & Graul, Houston, for appellee.

BARRON, Justice.

This is a suit for conversion of two television sets. After the submission of evidence the trial court, sitting without jury, rendered judgment for plaintiff in the sum of $1,000.00, the amount stipulated as damages by the parties. From that judgment White-Sellie's Jewelry Store has perfected this appeal.

There appears to be no dispute as to the facts. In December of 1968, appellee Goodyear sold two television sets to Freddie J. Redding and Redding quickly resold them to appellant, a pawnshop and retail business. Any security interest in the sets retained by appellee was never recorded and appellant had no knowledge of such interest. Ralph Goldstein, president of appellant White-Sellie's, testified that he knew Redding and had conducted business with him in the past. Redding assured him the sets were not stolen and Goldstein never received any notification that the sets were stolen property.

After purchasing the television sets, appellant resold them. In the spring of 1969, Goodyear contacted Goldstein and demanded return of the sets. Goldstein replied that the sets had already been sold. Goodyear subsequently filed suit on June 26, 1969, seeking damages for conversion against appellant.

In this appeal appellant contends that there is no evidence to show that appellant repudiated appellee's right or title to the sets; that appellee claimed any right of possession while appellant held the sets; that appellee made demand upon appellant while the sets were in appellant's possession; that appellant had control over the sets when demand was made; or that appellant ever exercised *wrongful* control of the two sets. Each of these points asserts that there is no evidence to support the trial court's implied findings.

■ In determining the legal sufficiency of evidence to support a judgment rendered by the trial court without the aid of a jury, in the absence of findings of fact and conclusions of law, only that evidence in support of the court's implied findings may be considered, and evidence which leads to a contrary finding must be disregarded. Bishop v. Bishop, 359 S.W.2d 869 (Tex.Sup.1962). The evidence supporting the theory upon which judgment impliedly is based need not be strong but only of some probative value. Seaman v. Seaman, 425 S.W.2d 339 (Tex.Sup.1968).

■ We note at the outset that no copy of the sales agreement between appellee and Redding appears in the record before this Court. Nor does the statement of facts reflect that the agreement was ever introduced into evidence at trial. Thus we have before us no instrument which reserves the security interest upon which appellee relies in seeking recovery for conversion. Nonetheless, appellant has not assigned as a point of error in its brief the lack of evidence of any security interest and consequently it has waived this point. See Getz v. Collins, 303 S.W.2d 818 (Tex. Civ.App.-Texarkana 1957, no writ). Both parties seem to have proceeded on the assumption that a valid security interest in appellee's favor does exist. And, during oral argument before this Court, both parties agreed that the sales agreement between appellee and Redding exists.

Appellant first asserts that appellee's failure to record its security interest renders that interest ineffective as against Goldstein, citing Tex.Bus. & Comm.Code Ann. sec. 9.302(a) (4) (1968), V.T.C.A. And, argues appellant, under Code sections 2.401, 2.403 and 2.702 Redding could pass title to one who, as Goldstein, purchases in good faith for value and without notice of any interest in appellee.

Section 9.302 does not exclude from its provisions a third person not a party to the transaction out of which the security interest arose. It says simply that no financing statement need be filed to perfect "(4) a purchase money security interest in consumer goods," e. g., television sets. Moreover, sec. 9.306(b) provides, in part,

". . . a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise. . . ."

Comment 3 under that section notes that a security interest continues in collateral conveyed to a transferee in an unauthorized sale by the debtor. The comment expressly says that the transferee takes subject to the security interest and "the secured party may . . . maintain an action for conversion." We think, therefore, that appellee is entitled by the Code to bring the instant conversion suit.

Appellant's reliance upon sections 2.401, 2.403 and 2.702 is misplaced. Section 2.401 does not alter the rights and obligations of the parties declared elsewhere in the Code. Section 2.403 concerns only a naked sale of goods and does not speak to a situation involving goods in which is reserved a security interest. Section 2.403(d) directs attention to Chapter 9 of the Code for provisions regarding secured transactions such as the present one. Section 2.702 pertains to insolvency and for that reason is inapplicable here.

If appellant, as transferee of goods in which appellee had a security interest, is to find protection in the Code from appellee's claim, it must be under section 9.307. Subsection (a) of that section provides that a buyer in ordinary course of business takes free of a security interest. However, section 1.201(9) in defining "buyer in ordinary course of business", specifically excludes pawnbrokers from that class. More-over, it requires that the transferror, here Freddie J. Redding, must be "in the business of selling" consumer goods such as those in question. This record will not sustain a conclusion that Redding was "in the business" of selling television sets.

Section 9.307(b) concerns consumer goods and declares that any buyer takes free of a security interest "if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes" unless prior to the purchase the secured party has filed a financing statement covering those goods. Although appellee did not file a financing statement, we do not believe that the record demonstrates that appellant, or its president Ralph Goldstein, purchased the sets "for his own personal, family or household purposes."

Appellant has sought to bring itself within the definition of a "buyer in ordinary course of business" by attempting to show that it purchased the sets in its capacity as a retail business, not as a pawnbroker. Appellant submits that its pawn brokerage business and its retail business are two distinct operations. However, there is evidence in the record that the two operations are but different functions of one business. Goldstein testified that both are carried on in his pawnshop, under the same company name of White-Sellie's Jewelry Company, Inc. Moreover, the purchases of the sets and a loan to Redding are all recorded on identical receipt forms taken from one register book. These identical forms appear in the record.

Appellant has not cited any cases, Texas or foreign, which are directly in point. We believe our application of the Code sections is wholly consistent with Mahaley v. Colonial Trading Co., 6 U.C.C.Rep. 746 (1969), decided by the Pennsylvania Court of Common Pleas, York County. In that case plaintiff sold and delivered to Susan Glatfelter a stereo set under an unfiled purchase money security agreement by

which title remained in plaintiff until payment of the purchase price was made. Before payment was made, Mrs. Glatfelter sold the set to the defendant. Defendant subsequently resold it. Plaintiff brought a suit for conversion charging that defendant was a dealer in furniture and appliances and that defendant did not purchase the set for its own personal, family or household use.

The court held that a sufficient claim for conversion had been stated. In its opinion the court notes that a purchase money interest in consumer goods is perfected without filing. Uniform Commercial Code, sec. 9.302(d). See Tex.Bus. & Comm.Code Ann., sec. 9.302(d). One who buys the goods from the debtor takes free of such interest only if he buys for his own personal, family or household purposes. Sec. 9.307(b). Otherwise, the security interest is effective and the secured creditor may sue the purchaser (transferee) for conversion. Sec. 9.306(b). In accord with the Mahaley case is United Gas Improvement Co. v. McFalls, 18 D. & C.2d (Lancaster, Pennsylvania, 713), 1 U.C. C.Rep. 508 (1958), cited in Mahaley. That prior case held that a defendant transferee bore the burden to show himself entitled to the protection of sec. 9.307(b).

■ Appellant's points of error all challenge appellee's proof of various purported elements of a suit for conversion, which, under sec. 9.306, he is entitled to maintain. The Supreme Court, speaking through Justice Daniel in the recent case of Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 446 (Tex.Sup.1971), has defined conversion as,

". . . the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights."

In the instant case, appellee had certain rights in the collateral by virtue of its security interest discussed above. We think that appellant's acquisition, holding as owner, and resale of that collateral constituted a wrongful exercise of dominion necessarily inconsistent with Goodyear's rights. Appellant offers no authorities for its proposition that dominion must have been exercised subsequent to appellee's demand upon appellant. That position presupposes the necessity of a demand and is without support in Texas law.

■ Appellant's complaint that it did not maliciously take or hold the sets will not aid it. Complete innocence and perfect good faith are no defense to a conversion action. Ligon v. E. F. Hutton & Company, 428 S.W.2d 434 (Tex.Civ.App.-Dallas 1968, writ ref'd n. r. e.). The requisite intent is only one to assert a right in the property, and a wrongful intent is not required. Powell v. Forest Oil Corporation, 392 S.W.2d 549 (Tex.Civ.App.-Texarkana 1965, no writ). Nor must appellee here have demonstrated, as appellant contends, that it made demand upon appellant at a time when the collateral still remained in appellant's hands. Where a third party who has acquired property has disposed of it, a demand and refusal are not necessary to show a conversion, even if such party was an innocent taker. 89 C.J.S. Trover and Conversion § 56c, p. 560 (1955).

Inasmuch as appellee is empowered under the Texas Business and Commerce Code to maintain this suit for conversion and has offered probative evidence of the elements of a conversion, the judgment of the trial court must be affirmed.